## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT T. HOUSER and NEUROBRIDGE, LLC, | : | Civil No. 1:22-MC-00836 |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| POWERDOT, INC. and THERABODY, INC., | : | |
| | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Before the court is the motion to quash subpoena filed by Defendant PowerDot, Inc. ("PowerDot").[1]  (Doc 1.)  PowerDot moves to quash a subpoena *duces tecum* on non-party Select Medical Corporation ("Select Medical") under Federal Rule of Civil Procedure 45.  For the reasons that follow, the court will deny the motion.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case originates from the United States District Court for the Northern District of Ohio, in which Plaintiff Robert Houser is suing Defendants for breach of employment contract.  (Doc. 2, p. 3; Doc. 7, p. 9.)[2]  Relevant to this motion,

---

[1] The court notes that the motion is titled "motion to quash subpoena *duces tecum* to Select Medical Corporation, or, alternatively, for protective order."  (Doc. 1.)  However, there were no arguments regarding a protective order in the motion or brief in support.  Accordingly, the court will not construe this as a motion for protective order and will only consider the motion as a motion to quash the subpoena.

[2] For ease of reference, the court utilizes the page numbers contained in the CM/ECF header.

Houser contends his employment as President of Healthcare at PowerDot was terminated improperly and PowerDot failed to "fulfill its [contractual] obligations to compensate Houser for intellectual property to which NeuroBridge had the rights and which PowerDot acquired and used as set forth in [the employment contract.]" (Doc. 7, p. 4.)  PowerDot contends the termination of Houser's employment was proper because it was for good cause due to discovering Houser was committing PPP loan fraud.  (Doc. 2, p. 3.)  Houser filed his complaint in the Northern District of Ohio on May 3, 2021.  (*Id.*)  On July 11, 2022, Judge Christopher Boyko granted in part and denied in part PowerDot's motion to dismiss, ultimately allowing all but Houser's misappropriation of intellectual property and violation of Ohio's trade secret law claims to proceed.  *See Houser, et al.  v. Powerdot, Inc.*, No. 1:21-CV-915, 2022 WL 18863810 (N.D. Ohio July 11, 2022).

On October 13, 2022, at the request of Plaintiffs, the Northern District of Ohio issued a subpoena to produce documents on Select Medical, directing Select Medical to produce "[a]ll documents and Electronically Stored Information ("ESI") that reflect or refer to communications between any officer . . . of Select Medical Corporation and Eric Glader [or TheraBody, Inc.]³ from April 15, 2021 to

---

³ Therabody, Inc. acquired PowerDot on April 15, 2021, and is a co-defendant.  *Houser v. PowerDot, Inc.*, No. 1:21-CV-915, 2024 WL 1990873, at *2 (N.D. Ohio May 6, 2024).

present[,]" and "[a]ll executed or proposed agreements . . . between Select Medical Corporation and TheraBody, Inc. concerning PowerDot MT, ThereHealth Platform or any medical (i.e., prescription required) version of the PowerDot product." (Doc. 2, p. 20.)  The subpoena provides that the documents shall be produced via email or link from Select Medical's location in Mechanicsburg, PA, by October 28, 2022, at 10:00 am.  (*Id.*)  Per Exhibit 1 attached to the motion to quash, Defendants' counsel received a copy of the subpoena, and other similar subpoenas, on October 13, 2022, at 12:33 p.m.  (Doc. 2, p. 16.)

On November 1, 2022, PowerDot filed the instant motion to quash the Select Medical subpoena.  (Doc. 1.)  PowerDot filed a brief in opposition on November 17, 2022.  (Doc. 7.)  Defendants filed a reply brief on December 2, 2022.  (Doc. 10.)  The court then scheduled a telephone conference to discuss this matter.  (Doc. 12.)  During the telephone conference, the parties noted that the subpoena was similar to a request for production of documents made by Plaintiffs in the underlying Ohio litigation, namely Plaintiffs' October 5, 2022, document production request number 5.  Thus, on January 13, 2023, the court stayed the motion to quash pending resolution of the discovery dispute regarding the document production request in the underlying litigation.  (Doc. 17.)

Thereafter, on May 20, 2024, Plaintiffs filed a status report, advising the court that all outstanding objections regarding document request number 5 had

been resolved.  (Doc. 18, ¶ 16.)  PowerDot responded with a similar status report, advising the court that "Therabody Request for Production No. 5 does not constitute an outstanding discovery request and is foreclosed from further consideration barring leave."  (Doc. 19, ¶ 14.)  From these rather vague statements, and after reviewing the docket of the Ohio case, the court infers that the motion to quash the subpoena pending before this court is now ripe for disposition.

### JURISDICTION AND VENUE

The instant motion is properly before this court because motions to quash or modify subpoenas must be brought in "the court for the district where compliance is required [.]"  FED. R. CIV. P. 45(3)(A), (B).  The subpoena requires compliance in Mechanicsburg, Pennsylvania, which is within the Middle District of Pennsylvania.

### STANDARD OF REVIEW

Federal Rule of Civil Procedure 45(3)(A) provides the rules for when a court must quash a subpoena, specifically stating:

> On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i) fails to allow a reasonable time to comply;
>
> (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
>
> (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

4

(iv) subjects a person to undue burden.

When a party proceeds under Rule 45(3)(A)(iv), "[t]he party seeking to quash the subpoena bears the heavy burden of demonstrating that the requirements of Rule 45 are satisfied." *CedarCrestone, Inc.v. Affiliated Computer Servs LLC*, No. 1:14-MC-0298, 2014 WL 3055355, at *3 (M.D. Pa. July 3, 2014.) This burden includes showing a "clearly defined and serious injury." *City of St. Petersburg, v. Total Containment, Inc.*, 07-mc-0191, 2008 WL 1995298, *2 (E.D. Pa. May 5, 2008). The movant also must show that the subpoena is "unreasonable and oppressive." *Lefta Assocs. v. Hurley*, No. 1:09-CV-2487, 2011 WL 1793265, at *3 (M.D. Pa. May 11, 2011) (quoting *Wright v. Montgomery Cnty.*, No. 96-4597, 1998 WL 848107, at * 2 (E.D. Pa. Dec. 4, 1998)).

Once the movant has met this burden, the court must then conduct a balancing test in which is "weighs the subpoenaing party's interest in disclosure and the subpoenaed nonparty's interest in non-disclosure to determine whether the burden on the subpoenaed nonparty is, in fact, undue." *In re Domestic Drywall Antitrust Litig*, 300 F.R.D. 234, 239 (E.D. Pa. 2014). The balancing test requires the court to "weigh (1) the relevance, (2) need, (3) and confidentiality of the requested materials, as well as (4) the harm that compliance would cause the subpoenaed nonparty." *Id.*

### DISCUSSION

In its brief in support, PowerDot argues that the subpoena is "facially invalid" because it was not served properly, it violates Federal Rule of Civil Procedure 45(c), it is overbroad, it was not served with sufficient notice, and it was not served with "required witness fees." (Doc. 2, pp. 6, 7.) Further, PowerDot argues that the subpoena is unduly burdensome because it seeks information that is irrelevant, not needed, confidential, and will "disclose confidential information to Houser who remains employed in the healthcare industry." (*Id.* at 7, 8.)

In their brief in opposition, Plaintiffs argue that PowerDot does not have standing to quash a non-party subpoeana because "[a]ny motion to quash or modify a subpoena directed towards a non-party must be brought by the non-party itself[,]" and PowerDot has no claim of privilege which would meet the exception to the standing rule. (Doc. 7, pp. 11, 12.) Plaintiffs further argue the subpoena is not defective. (*Id.* at 13–15.) Finally, Plaintiffs argue that PowerDot has not met its burden of showing a clearly defined and serious injury; any injury it may suffer can be mitigated by standing protective orders in this case; and the documents sought by the subpoena are relevant to Plaintiffs' breach of contract claim. (*Id.* at 15–20.)

In its reply brief, PowerDot notes that a similar subpoena in the District Court for the District of New Jersey was withdrawn due to Plaintiffs' failure to

request similar documents from PowerDot.  (Doc. 10, p. 5.)  PowerDot states it has

standing in "their own private business *prospective* dealings with a third-party,"

and it "ha[s] a real and defined interest in the business records[.]"  (*Id.* at 6.)

PowerDot further argues "[t]hese communications are covered by non-disclosure

agreements (NDAs) between PowerDot and SelectMedical and between

TheraBody and Select regarding a potential joint venture."  (*Id.* at 7.)  Powerdot

argues that "[t]hese joint ventures also involve the separate parties' attorneys that

are involved in most, if not all, of the discussions, further subjecting them to

attorney client privilege and/or attorney work product."  (*Id.*).  Defendants then re-

state their arguments regarding the technical aspects of the subpoena and the

relevance of the documents requested.  (*Id.* at 7–14.)[4]

      The court will address each argument in turn, beginning with standing.

## A. Standing

      It is well established that "a party does not have standing to quash a

subpoena served on a third party."  *Thomas v. Marina Assocs.*, 202 F.R.D. 433,

434 (E.D. Pa. 2001) (quoting *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D.Colo.

1997)).  However, "there is an exception that provides a party standing to an action

to quash or modify a non-party subpoena when the party seeking to quash or

---

[4] The court also notes that PowerDot requested attorney's fees as a sanction.  (Doc. 2, p. 9.)
Because the court denies the motion to quash, it will not address the request for sanctions.

modify the subpoena claims a privilege or privacy interest in the subpoenaed information." *Duffy v. Kent Cnty. Levy Ct.*, 800 F. Supp. 2d 624, 628 (D. Del. 2011).  Moreover, "[e]ven if a defendant has standing generally to quash a subpoena, he still lacks standing to challenge a third-party subpoena based on undue burden because it is the third-party that faces the burden of production and not the defendant." *Green v. Cosby*, 314 .F.R.D. 164, 173 (E.D. Pa. 2016). Examples of a "personal right or privilege" include "assertion[s] of work product or attorney-client privilege, interference with business relationships, or production of private information about the party that may be in the possession of a third party." *Parker v. Four Seasons Hotels, Ltd.*, 291 F.R.D 181, 187 (N.D. Ill. 2013). To show they have a personal right or privilege in this information, the moving party must employ more than boilerplate objections and make a "factual showing that the records are confidential or proprietary." *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 321 F.R.D. 426, 429 (M.D. Fla. 2005); *see also Saller v. QVC, Inc.*, No. 15-CV-2279, 2016 WL 8716270, at * 6 (E.D. Pa. June 24, 2016).

Here, PowerDot did not address the issue of standing until its reply brief.  In the reply brief, PowerDot offers only conclusory statements that the subpoenaed documents are confidential and privileged, and Defendants have made no factual record showing these assertions to be true.  It is possible that some of the subpoenaed documents could be subject to NDAs and also protected by attorney-

client privilege or the attorney-work product doctrine.  However, the court will not reach such a broad conclusion without any factual record upon which to base such a conclusion.  Therefore, the court will assume without deciding that Defendants have standing to challenge the non-party subpoena.

### B. Technical Requirements

PowerDot argues a litany of technical requirements that it contends give the court grounds to quash the subpoena.  The court will note that Rule 45(3)(A) gives a limited number of technical defects for which a court may quash a subpoena, specifically failure to allow a reasonable time to comply or requiring a person to comply beyond the 100-mile limit established in Rule 45(c).  None of these are at issue here.  Turning to PowerDot's first alleged defect, improper service, the court notes that there is no certificate of service filed in either this court's docket or the Northern District of Ohio's docket.  However, all parties are aware of the subpoena, as they are currently litigating it, and it has been attached and provided in the instant record for the court to review.  Further, Select Medical, the recipient of the subpoena, has not challenged the subpoena.  Moreover, improper service is not grounds for quashing a subpoena under Rule 45(3).  Therefore, the court will not quash the subpoena due to improper service.

Next, PowerDot asserts "the Subpoena to Select Medical Corporation is facially invalid[,]" and then cites Fed. R. Civ. P. 45(c) and case law discussing the

100-mile nonparty limit on subpoenas. (Doc. 2, p. 6.) To the extent that these citations can be construed as an argument that the subpoena requires compliance outside of the 100-mile range imposed by Fed. R. Civ. P. 45(c), the court notes that the subpoena states the place of compliance is "via email or downloadable link" from Select Medical's address in Mechanicsburg, Pennsylvania. As document production will take place in Mechanicsburg, Pennsylvania, the subpoena does not require compliance outside of 100 miles of Mechanicsburg, Pennsylvania. Moreover, "[b]ecause a subpoenaed person or entity that is directed only to produce documents need not appear in person at the place of production, Rule 45's protections against compelled travel do not apply to the production of documentary materials." *Est. of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 240 (D.D.C. 2013). Therefore, the court will not quash the subpoena on this ground.

PowerDot next argues that the subpoena is overly broad and cites to Fed. R. Civ. P. 45(a)(1)(A)(iii) in support of this assertion. The court notes that this subsection does not provide any particularity requirement for subpoenas other than the subpoena must "command each person to whom it is directed to do the following at a specified time and place; attend and testify; produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises [.]" FED. R. CIV. P. 45(a)(1)(A)(iii). Here, the subpoena directs Select Medical to produce

designated documents and ESI.  To the extent this is a challenge to the relevancy of the requested documents under Rule 26 standards, the court will address this issue below.

PowerDot also argues that Plaintiffs did not provide sufficient notice before serving the subpoena.  (Doc. 2, p. 6.)  Rule 45(a)(4) requires that a notice and a copy of a subpoena requiring production of documents must be served on each party prior to the subpoena's issuance.  "The purpose of prior notice is to afford other parties an opportunity to object to the production or inspection and to obtain the materials at the same time as the parties who served the subpoena." *CedarCrestone*, 2014 WL 3055355, at *6.  Here, Exhibit 1 attached to PowerDot's brief in support shows that Plaintiffs' counsel notified PowerDot's counsel on October 13, 2022, at 12:33 P.M. that Plaintiffs were serving the subpoena.  The subpoena is dated October 13, 2022.  There is no indication in the record when the subpoena was received by Select Medical.  PowerDot clearly had sufficient time to object to the subpoena as it had the opportunity to confer with counsel and the opportunity to file a motion to quash.  Therefore, the subpoena will not be quashed for this reason.

Finally, PowerDot argues that Plaintiffs failed to "render required witness fess to the third parties[.]"  (Doc. 2, p. 7.)  However, Fed. R. Civ. P. 45(b)(1) provides that witness fees need only be tendered "if the subpoena requires that

person's attendance[.]"  As this subpoena clearly does not require any person's

attendance, this section is inapplicable, and the subpoena will not be quashed for

this reason.  Therefore, the court will not quash the subpoena for any "facial"

defects, and now moves to determining whether the subpoena is unduly

burdensome.

### C. Undue Burden

As noted above, the party moving to quash a subpoena as unduly

burdensome carries a heavy burden of showing a clearly defined injury that would

result from the production of the requested documents.  *CedarCrestone*, 2014 WL

3055355, at *3.  In making this determination, the court must weigh "(1) [the]

relevance of the information requested; (2) the need of the party for the documents;

(3) the breadth of the document request; (4) the time period covered by the request;

(5) the particularity with which the party describes the requested documents; and

(6) the burden imposed."  *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at

252 (quoting *Wiwa v. Royal Dutch Petroleum Co*., 392 F.3d 812, 818 (5th Cir.

2004)).

Here, the court notes at the outset that PowerDot has not shown that it will

suffer a clearly defined injury from Select Medical producing the requested

documents.  PowerDot asserts only that the result of this subpoena is "disclos[ing]

confidential information to Houser who remains employed in the healthcare

industry[,]" and that there is a "vast potential of harm" if the documents are

disclosed to Plaintiffs.  (Doc. 2, p. 8; Doc. 10, p. 9.)  These broad conclusions are

insufficient to show any injury sufficient to support quashing the subpoena.

Moreover, PowerDot's many arguments that any discovery relating to IP is

irrelevant in this case due to the dismissal of the "IP claims" are unavailing, as the

Northern District of Ohio has specifically directed that "Plaintiffs pending Breach

of Contract Claim encompasses Defendant's alleged failure to fulfill its obligations

to compensate Houser for intellectual property to which NeuroBridge had the

rights and which PowerDot acquired and used as set forth in paragraph 9 of his

employment Agreement.'"  *Houser v. PowerDot, Inc.*, No. 1:21-CV-715, 2024 WL

1990873, at * 4 (N. D. Ohio May 4, 2024).  Plaintiffs argue that the requested

documents are relevant because communications between PowerDot and Select

Medical regarding marketing of the IP at issue go directly to the breach of contract

claim, and further, the information is relevant because "Houser's damages are

measured by the value, or potential value, of the intellectual property . . . .

Evidence of the value that TheraBody and a potential business partner placed on a

product containing that intellectual property is relevant to the issue of Houser's

contractual damages."  (Doc. 7, p. 19.)  The court agrees with Plaintiffs that the

documents requested from Select Medical are relevant to Houser's breach of

contract claim.

Further, the court notes that Select Medical has not objected in any way to the subpoena, which weighs in favor of finding that the request is not overly burdensome to Select Medical.  To the extent that the documents requested in this subpoena are no longer needed because the same information may have been produced by PowerDot as a result of Plaintiff's request for production 5, the court notes that there are no outstanding objections to request for production 5 and Plaintiffs have not withdrawn their subpoena.  The party who would be in the best position to know if the Select Medical had more information than what has been provided to Plaintiffs is PowerDot, yet there has been no argument by PowerDot that the information sought by the subpoena is duplicative.  Accordingly, there appears to be some ongoing need for this information.  Finally, to the extent that PowerDot is concerned about confidential or privileged information being produced to Plaintiffs via this subpoena, the court notes that there is a protective order in this case in the Northern District of Ohio that may address those concerns.

Accordingly, the court finds that PowerDot has not shown a clearly defined and serious injury due to an unduly burdensome subpoena.  Therefore, the requirements of Rule 45 have not been satisfied, and the court will deny the motion to quash the subpoena.

CONCLUSION

Defendants have not satisfied the requirements of Rule 45, and therefore, the

motion to quash subpoena will be denied.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania


Dated: June 24, 2024